# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3292

_____

Shirley Hutsell,                                    *
                                                    *
           Appellant,                               *
                                                    *    Appeal from the United States
      v.                                            *    District Court for the
                                                    *    Eastern District of Arkansas.
Larry G. Massanari,[1]                              *
                                                    *
           Appellee.                                *

_____

Submitted:  April 13, 2001

Filed:  August 1, 2001

_____

Before WOLLMAN, Chief Judge, MAGILL, and MURPHY, Circuit Judges.

_____

WOLLMAN, Chief Judge.

Shirley Hutsell appeals from the district court's grant of summary judgment in favor of the Commissioner of the Social Security Administration on her application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 416(i) & § 423.  We reverse and remand with instructions to remand to the Social Security Administration.

_____

[1]Pursuant to Fed. R. App. P. 43(c)(2), Acting Commissioner Larry G. Massanari, appointed to serve effective March 29, 2001, is automatically substituted for former Commissioner Kenneth S. Apfel.

# I.

Hutsell was born on June 24, 1944, and has a sixth-grade education. She has a long history of mental illness. She sought professional medical attention as early as 1974 and was hospitalized at least twice for psychotic episodes prior to 1990. In 1991, Hutsell was again hospitalized; according to the records of George W. Jackson Community Mental Health Center in Jonesboro, Arkansas, on October 15, 1991, Hutsell's husband admitted her, "rambling to the point of incoherence," to the hospital because she had been hearing and seeing things, locked herself in the bathroom, and urinated on the floor.

Hutsell has been diagnosed with various chronic schizophrenia-based disorders, including Schizoaffective Disorder, Bipolar Type.[2] Her intellectual functioning is borderline.[3] She takes several different medications, including antipsychotic drugs, and frequently reports to her primary treating physician, Dr. Mark Baltz, for medication checks and adjustment. In 1992, neuro/clinical psychologist Dr. William Wilkins concluded that Hutsell's condition "could evolve into a reasonably short term frank psychosis" if confronted with stress but that with medication and a low-stress environment Hutsell would likely continue to do well. In 1993, Dr. Joseph Crupie observed that Hutsell's "prognosis for a recurrent Schizophrenic episode is good." No doctors have noted any evidence of malingering or exaggeration.

---

[2]Schizophrenia is "a common type of psychosis, characterized by a disorder in perception, content of thought, and thought processes . . . and extensive withdrawal. . . ." Stedman's Medical Dictionary 1579 (26th ed. 1995). Schizoaffective means "[h]aving an admixture of symptoms suggestive of both schizophrenia and affective (mood) disorder." Id. at 1578.

[3]Borderline intellectual functioning is a condition defined as an IQ score within the 71-84 range, while mental retardation is a score of about 70 or below. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, 39-40, 684 (4th ed. 1994).

On a daily basis, with medication, Hutsell's symptoms include depression, memory loss, and confusion. Hutsell suffers from periods of depression and from shaky spells two or three times a week. Side effects from her medication include drowsiness and occasional loss of balance. Hutsell generally rises early and makes breakfast for herself and her daughter. During the day, Hutsell cooks, cleans, does laundry, and sometimes visits friends or socializes at the local senior citizen center. Her housework is occasionally unfinished because she forgets what she is doing. She watches a few hours of television, reads the newspaper, and listens to the radio for a few hours. Hutsell drives only in town and shops for groceries but she often must make several trips because of her memory problems. Her brother-in-law sometimes shops for her.

Several consulting doctors have addressed Hutsell's impairments in the context of her capacity for work-related activities. In 1994, Dr. W. Gerald Fowler, a psychiatrist, observed that Hutsell "could not understand and remember simple primarily oral instructions six hours per day five days per week" and "[o]nly a blood relative or close family friend . . . could tolerate [Hutsell's] episodes of confusion," concluding that "[r]epeat hospitalization would probably be precipitated by the stress of increased expectations of her such as she would experience with any full-time job." Also in 1994, consulting psychologist Dr. Stephen Harris diagnosed Hutsell's borderline intellectual functioning and concluded that Hutsell was "seriously limited, but not precluded" in the majority of work-related skills listed on his assessment form. He rated her ability to deal with work stresses and maintain concentration and attention as both fair and "poor to none," which means "[n]o useful ability to function in this area." In September of 1997, Dr. Paul Loop, a psychiatrist, concluded that Hutsell is markedly limited in many areas relating to adaptation, and concentration and persistence, and moderately limited in several areas of social interaction, and understanding and memory. Dr. Loop concluded that "[w]hile she has responded

favorably to neuroleptic [antipsychotic drug] use, she is still significantly impaired and would have great difficulty obtaining and maintaining gainful employment."

Hutsell's past relevant work experience includes that of a cook and a cook's helper. Hutsell stated that when she worked full-time, her primary employer let her leave work and take time off when necessary. Hutsell's work history shows that her income declined in 1990 and 1991. She earned $2790.07 in 1991 and $1815.75 in 1990, which is about $6000 less than the year before. Since her 1991 discharge from the hospital, Hutsell has not engaged in full-time employment. Hutsell has, however, worked as a temporary part-time or fill-in employee, although the number of hours that she has worked are minimal. She had no reported income in 1992, 1994, or 1995, $427.52 in 1993, and $2572.00 in 1996, when she worked as a temporary "fill in" dishwasher.

On August 28, 1992, Hutsell filed an application for disability benefits, alleging an onset date of October 31, 1990. Hutsell asserts that she is unable to work because of a nervous breakdown and mental problems. The Social Security Administration denied Hutsell's application initially and again on reconsideration. Hutsell then requested and received a hearing before an administrative law judge (ALJ). The ALJ denied benefits in 1994, and Hutsell appealed the decision to the Appeals Council, which remanded the case. In 1996, an ALJ again denied Hutsell benefits, and again the Appeals Council remanded.

After a third hearing, an ALJ issued an opinion on May 28, 1998, again denying benefits. The ALJ evaluated Hustell's claim according to the five-step sequential analysis prescribed by the social security regulations. See 20 C.F.R. §§ 404.1520(a)-(f); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing analysis). At the first three steps of the analysis, the ALJ found that Hutsell had not engaged in substantial gainful activity since her onset date; that she suffered from chronic

schizophrenia disorder, controlled with medication; possible bipolar disorder, controlled with medication; and borderline intellectual functioning; and that she had severe impairments that did not meet or equal a listed impairment.

Although the ALJ completed a Psychiatric Review Technique Form (PRTF), the determination of Hutsell's residual functional capacity was based not on the updated medical evidence but on the 1996 ALJ decision, which found Hutsell to be only slightly impaired because "the longitudinal record establishes that the claimant has function[ed] well despite many types of stresses related to family illness, family death, death of friends, 2 adjudication hearings in this matter, illness of an adult child, and adolescent [sic] of a dependent child . . . ." At the fourth step of analysis, the ALJ determined that Hutsell has the capacity for work other than that which involves highly complex tasks requiring abstract thinking or close interpersonal contact. The ALJ subsequently concluded that Hutsell could return to her past work as a cook or cook's helper and denied her claim for benefits.

Hutsell again appealed. This time, the Appeals Council denied her request for further review. Accordingly, the ALJ's judgment became the final decision of the Commissioner. Hutsell then sought review in the district court, which granted summary judgment in favor of the Commissioner. Hutsell now appeals, arguing that the ALJ's functional capacity determination is not supported by substantial evidence in the record. She also contends that the ALJ erred in determining that she could return to her past relevant work. At oral argument, Hutsell's counsel added that the case should be remanded pursuant to our recently issued opinion in Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001).

**II.**

Our role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. Id. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000). As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, id., or because we would have decided the case differently, Browning v. Sullivan, 958 F.2d 817, 822 (8th Cir. 1992).

With regard to mental disorders, the Commissioner's decision "must take into account evidence indicating that the claimant's true functional ability may be substantially less than the claimant asserts or wishes." Parsons v. Heckler, 739 F.2d 1334, 1341 (8th Cir. 1984). Given the unpredictable course of mental illness, "[s]ymptom-free intervals and brief remissions are generally of uncertain duration and marked by the impending possibility of relapse." Andler v. Chater, 100 F.3d 1389, 1393 (8th Cir. 1996). Moreover, "[i]ndividuals with chronic psychotic disorders commonly have their lives structured in such a way as to minimize stress and reduce their signs and symptoms." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). "Such individuals may be much more impaired for work than their signs and symptoms would indicate." Id.

Although the ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence, a claimant's residual functional capacity is a medical question. Lauer, 245 F.3d at 704; Singh v. Apfel, 222

F.3d 448, 451 (8th Cir. 2000). "Where the medical evidence is equally balanced . . . the ALJ resolves the conflict." Bentley v. Shalala, 52 F.3d 784, 787 (8th Cir. 1995). As we held in Lauer, however, some medical evidence "must support the determination of the claimant's [residual functional capacity], and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." Lauer, 245 F.3d at 704 (internal quotation marks and citation omitted). To properly determine a claimant's residual functional capacity, an ALJ is therefore "required to consider at least some supporting evidence from a [medical] professional." Id.

In this case, the ALJ's residual functional capacity assessment was not properly informed and supported by "some medical evidence"in the record, see id., and thus it cannot stand. Hutsell's medical records show that her impairment is not limited to her ability to engage in close interpersonal contact and for abstract thinking.

Hutsell has been hospitalized at least three times for psychotic episodes that occurred unpredictably. Her medication helps to control her condition but does not cure it or alleviate the possibility that Hutsell will relapse or decompensate. Dr. Baltz has not discharged Hutsell from treatment, continuing to prescribe medication and requiring her to see him frequently. He noted in 1996 and 1997 that Hutsell reported that she was working, but his records offer no opinion on Hutsell's work-related capabilities. A treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting an ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment. Id. at 705. Moreover, Dr. Baltz's notes from Hutsell's August 30, 1996, visit disclose that although Hutsell was doing "reasonably well," she had had "a near syncopal episode at work."

-7-

Both consulting psychiatrists who addressed Hutsell's work-related functional capacity, Dr. Fowler and Dr. Loop, concluded that Hutsell's capacity for sustained employment is nonexistent. The opinion of Dr. Harris, the consulting psychologist, is the only medical evidence addressing Hutsell's work-related capabilities that is at all supportive of the conclusion that Hutsell may have some ability to work, but even he found Hutsell to be far more impaired than did the ALJ. Dr. Harris concluded that she was seriously limited in most areas of work-related performance and had no useful ability to function in the areas of dealing with work stress and maintaining concentration and attention. No medical evidence supports the ALJ's conclusion that Hutsell is only slightly impaired and that her only significant limitations are in her capacity for abstract thinking and for close interpersonal contact.

The Commissioner argues what would generally be valid reasons for discounting the opinions of each of the various consulting medical professionals (including Dr. Harris), but in this case, that argument serves only to highlight the fact that no medical opinion supports the ALJ's residual functional capacity determination. We also believe that the Commissioner erroneously relied too heavily on indications in the medical record that Hutsell was "doing well," because doing well for the purposes of a treatment program has no necessary relation to a claimant's ability to work or to her work-related functional capacity. See, e.g., Gude v. Sullivan, 956 F.2d 791, 794 (8th Cir. 1992); Fleshman v. Sullivan, 933 F.2d 674, 676 (8th Cir. 1991). Given that Hutsell's treating physician has not discharged her from treatment and requires her to see him frequently and that other doctors have concluded that Hutsell's work skills are seriously deficient, "doing well" as a chronic schizophrenic is not inconsistent with a finding of disability.

Hutsell's 1995 hearing statement, "I could wash dishes," does not require a different conclusion, particularly because she also stated that she would likely still have the periodic spells that forced her to leave work when she was working full-time. The

Commissioner's decision "must take into account evidence indicating that the claimant's true functional ability may be substantially less that the claimant asserts or wishes." Parsons, 739 F.2d at 1341. "[I]n selecting employees employers are concerned with substantial capacity, psychological stability, and steady attendance; they will not unduly risk increasing their health and liability insurance costs by hiring a person with serious physical or mental problems." Id. at 1340 (internal quotation, alteration, and citation omitted).

Because the briefs in this case were filed before Lauer, the Commissioner discounts most of the medical record and instead relies primarily on Hutsell's daily activities, see Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998), and her part-time work to support the ALJ's decision, although the Commissioner readily concedes that such work does not equate with a finding that a claimant can work on "a daily basis in the 'sometimes competitive and stressful' environment of the working world," Warburton v. Apfel, 188 F.3d 1047, 1051 (8th Cir. 1999) (quoting Easter v. Bowen, 867 F.2d 1128, 1130 (8th Cir. 1989)). Hutsell's consistent work record prior to 1990, however, supports the credibility of her disability complaint, see Singh, 222 F.3d at 453, and a claimant need not be bedridden to qualify for disability benefits, see Haggard v. Apfel, 175 F.3d 591, 594 (8th Cir. 1999); Kelley v. Callahan, 133 F.3d 583, 589 (8th Cir. 1998).

The medical evidence uniformly indicates that the stress of any sustained work is more than Hutsell can handle. Hutsell has gone through three administrative hearings, three appeals to the Appeal Council, and many psychological evaluations arranged by both her attorney and the Social Security Administration, and no medical evidence demonstrates that she can be expected to engage in work on a sustained basis. Even putting to one side the evaluations of the consulting psychiatric specialists, Hutsell's records show that she is subject to erratic periods of breakdown, that she

suffers from moderate to complete impairment in work-related skills, and that she is employable only by those who will tolerate her periods of instability.

The Commissioner asserts that Dr. Harris's opinion, which itself notes that Hutsell's abilities in some areas are "poor to none," supports a finding that Hutsell is not disabled because he assessed her as "fair" in most categorizations. In Cantrell v. Apfel, 231 F.3d 1104, 1107-08 (8th Cir. 2000), we noted that "the term 'fair' requires a review of the entire record in order to judge whether the balance tips toward functional ability or toward disability." In this case, however, Dr. Harris's opinion itself tips in favor of disability, and the other evidence overwhelmingly points to such a finding.

Hutsell's minimal daily activities are consistent with chronic mental disability, see 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (those with chronic mental illness often show fewer symptoms when in structured, low-stress environment). Hutsell's condition may be in remission, but "it is inherent in psychotic illnesses that periods of remission will occur, and that such remission does not mean that the disability has ceased." Andler, 100 F.3d at 1393 (internal quotation, alteration, and citation omitted).

Based upon our review of the record, and having given due deference to the ALJ's findings, we see no reason to prolong this case into its second decade. "In reviewing administrative decisions, it is the duty of the Court to evaluate all of the evidence in the record, taking into account whatever in the record fairly detracts from the ALJ's decision." Easter, 867 F.2d at 1131. The clear weight of the evidence points to a conclusion that Hutsell is disabled. "Where further hearings would merely delay receipt of benefits, an order granting benefits is appropriate." Parsons, 739 F.2d at 1341; see Fleshman, 933 F.2d at 676.

Accordingly, the judgment is reversed, and the case is remanded to the district court with instructions to remand the case to the Social Security Administration for an award of benefits.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.