**Tiffany RIVERA, Plaintiff,**

v.

**Larry G. MASSANARI[1], Acting Commissioner of Social Security, Defendant.**

**No. 3–01–CV–90066.**

United States District Court, S.D. Iowa, Davenport Division.

Nov. 6, 2001.

---

1. Larry G. Massanari became the Acting Commissioner of Social Security on March 29, 2001. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure [Rule 43(c)(2) of the Federal Rules of Appellate Procedure], Larry G. Massanari should be substituted, therefore, for Commissioner Kenneth S. Apfel, or for Acting Commissioner William A. Halter as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

John A. Bowman, Davenport, IA, for plaintiff.

Inga Bumbary–Langston, Assistant United States Attorney, Des Moines, IA, for defendant.

## ORDER

PRATT, District Judge.

Plaintiff, Tiffany Rivera, filed a Complaint in this Court on May 25, 2001, seeking review of the Commissioner's decision to deny her claim for Social Security benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* This Court may review a final decision by the Commissioner. 42 U.S.C. § 405(g). For the reasons set out herein, the decision of the Commissioner is reversed.

Plaintiff was awarded supplemental security income disability benefits based on an application filed on May 21, 1987, due to borderline intellectual functioning and conduct disorder. Tr. at 43–46, 280, 289. On

December 23, 1997, Plaintiff and her mother were notified that her claim for benefits would be re-determined based upon Plaintiff's attainment of age 18. Tr. at 286–88. Subsequently, Plaintiff was notified that her benefits would cease beginning June 15, 1998. Tr. at 290–93. After a hearing on August 16, 1999 (Tr. at 42A–42Y), Administrative Law Judge Andrew T. Palestini (ALJ) issued a Notice Of Decision— Unfavorable on November 26, 1999. Tr. at 11–32. On March 30, 2001, the Appeals Council declined to review the ALJ's decision making it the final decision of the Commissioner. Tr. at 7–8. Complaint was filed in this Court on May 25, 2001. On October 1, 2001, the Commissioner moved this Court to remand the case for further administrative proceedings. Plaintiff joined the Commissioner's Motion on October 1, 2001. Having reviewed the entire record, however, the Court is of the opinion that no purpose would be served by a remand to take additional evidence because the record supports a finding that Plaintiff is unable to engage in any substantial gainful activity due to her medically determinable impairments. The Motion To Remand, therefore, will be denied and the case will be remanded for the computation and payment of benefits.

In the brief accompanying the Motion, the Commissioner states that on remand, the ALJ will be directed to evaluate all of Plaintiff's impairments including those identified in the psychological evaluation of September 15, 1999 (Tr. at 715–39). In addition, the Commissioner wrote that the ALJ would be instructed to proceed to step five of the sequential evaluation due to the fact that Plaintiff's has no work that meets the regulatory definition of past relevant work.

At the outset, it should be noted that the Court has read each and every one of the 739 pages in this record and, in making this decision, the Court has considered the evidence which supports the ALJ's decision, as well as that which detracts therefrom. Discussion in this opinion, however, will focus on the psychological evaluation pointed to by the Commissioner as well as the reports of other treating, examining and reviewing psychologists.

Plaintiff was seen for a psychological evaluation by Jo Ann C. Milani, Ph.D. on September 15, and October 6, 1999. Dr. Milani administered several psychological instruments upon which she based her opinion regarding Plaintiff's mental residual functional capacity. A Neuropsychological Symptom checklist revealed that Plaintiff has seen doctors for sleep disorders and that she has seen doctors for mental health care since she was three years old. Plaintiff has a history of a seizure disorder but has had no seizures since 1996. Plaintiff complained of frequent headaches and fatigue. Plaintiff said that she finds it hard to think clearly, is easily distracted and has trouble with common sense. Plaintiff possessed a prescription for Wellbutin but had been unable to get it filled due to financial problems. On mental status examination, Plaintiff presented herself as tired and almost uninterested in the evaluation. Dr. Milani noted that Plaintiff nearly fell asleep during the evaluation. Plaintiff's thinking was often bizarre. Tr. at 716.

Dr. Milani opined that Plaintiff meets the criteria for Attention Deficit Hyperactivity Disorder, Combined Type which "includes both inattention and hyperactivity and impulsivity and restlessness and 'boredom'. The boredom comes from the inability to stay alert enough to stay focused and attentive." It is often a later complaint of teenagers who have been diagnosed with ADHD. This examiner was struck with the almost "narcoleptic state of the examinee." Plaintiff's insight and judgment were noted to be poor. On the

Wechsler Adult Intelligence Scale III, Plaintiff scored a verbal IQ of 74, a Performance IQ of 92, and a full scale IQ of 80. On the Wechsler Memory Scales, Plaintiff did "very poorly." Dr. Milani wrote:

It appears that Tiffany has great difficulty retelling a story with accuracy more than likely because she does not understand what she is hearing, that is the sequence of the events in the story and the details. This skill is crucial to daily communication skills. If one constantly misinterprets what one hears, then one is likely to have a very distorted view of reality. This would account for Tiffany's poor attitude and hostile and belligerent way of functioning. The ability to interpret situations correctly and to question what is happening is necessary to functioning in society.

Plaintiff did not score in the organic range on the Bender Gestalt Test suggesting that her illness was more functional than due to an organic brain pathology. On the Wide Range Achievement Test 3 Revision, Plaintiff demonstrated a reading ability at the early 4th grade level, spelling at the 5th grade level and arithmetic at the late 3rd grade level. These scores were approximately what is to be expected given Plaintiff's intellectual ability. Tr. at 718.

Plaintiff produced a valid profile on the Minnesota Multi–Phasic Inventory (MMPI). The test showed an individual who is self-centered and infantile in her expectations of other people. Tr. at 719. Commenting on the test, Dr. Milini wrote:

... This code is suggestive of serious psychological disturbance, particularly if scales 8 and 9 are grossly elevated. The modal diagnosis of % is Schizophrenia. Severe disturbances in thinking is likely, % individuals are confused, perplexed, and often disoriented, and they report feelings of unreality. They have great difficulty concentrating and thinking and they are unable to focalize on issues.

Thinking also may appear to be odd, unusual, autistic and circumstantial. Speech may be bizarre and may include clang associations, neologisms, and echolalia. Delusions and hallucinations may or may not be present.... Scale 8 was at T–70 and Scale 9 was at T–75. Chronic Schizophrenia scores often fall more in the range of Tiffany's than in the very high ranges.

Tr. at 719. Dr. Milani's Axis I diagnoses were ADHD Combined Type, Rule out Schizophrenia, Possible Anorexia, Hyperactive Sexual Desire Disorder. On Axis II the diagnoses were Borderline Verbal IQ, Developmental Reading Disorder (Dyslexia by patient report). On Axis III, Seizure disorder in remission, Hypersomnia, rule out Narcolepsy, Mitro valve prolapse. Dr. Milani's global assessment of functioning (GAF) was 40. Tr. at 720.

Dr. Milani also completed a Medical Assessment Of Ability To Do Work–Related Activities (Mental). Tr. at 738–39. The following areas were rated as "fair", i.e. seriously limited but not precluded: follow work rules; relate to co-workers; deal with the public; interact with supervisors; maintain attention/concentration; understand remember and carry out complex job instructions; understand, remember and carry out detailed, but not complex, job instructions; and, maintain personal appearance. The following areas were rated "poor or none", i.e. no useful ability to function: use judgment; deal with work stresses; behave in an emotionally stable manner; relate predictably in social situations; and, demonstrate reliability. Only one area is marked "good", i.e. limited but satisfactory: Understand, remember and carry out simple job instructions.

Plaintiff's has a long history of treatment at Vera French Community Mental Health Center where she was treated for various illnesses including dysthymia, at-

tention deficit hyperactivity disorder, learning disorders (Tr. at 590), oppositional defiant disorder, overanxious disorder, a history of seizure disorder and significant difference between verbal and performance IQ (Tr. at 591). A psychiatric report dated March 18, 1993, notes that an evaluation at the University of Iowa showed that Plaintiff scored a verbal IQ of 82, a performance IQ of 107, and a full scale IQ of 93. Tr. at 591. The record contains the report of a school psychological evaluation when Plaintiff was 9 years, 10 months old at which time Plaintiff scored a verbal IQ of 81, a performance IQ of 112, and a full scale IQ of 95. Tr. at 419.

Plaintiff saw Wayne M. Sliwa, Ed.D. in 1996 on referral from Daniel Johnson, M.D. Upon presentation, Plaintiff appeared "so bored that she would not even make eye contact." At other times she closed her eyes and fall asleep. Dr. Sliwa noted that Plaintiff has a long history of mental health treatment and that she had been diagnosed with attention deficit disorder at age three. Tr. at 541. Dr. Sliwa wrote:

> In reviewing the symptomology of this young lady, it is very clear that we have multiple problems. In addition to the Attention Deficit Disorder and learning disability problems, Tiffany has a history of Oppositional Defiant symptomology and also some Conduct Disorder problems. More recently, she has had some severe stressors in her life. Her close friend, Michelle Jenson, was killed in 1993. Last June, she was kidnapped (sic) and raped. She claims, however, that the kidnapping (sic) and rape do not bother her due to the fact that she likes sex. I believe the last two stressors need to be reviewed and need to be evaluated with regards to how they are affecting her at the present time. She did not give me much information regarding the stressors other than admit-

ting to the fact that she feels uncomfortable talking about them.

Tr. at 541–42. Plaintiff saw Dr. Sliwa two more times after which he closed the case because Plaintiff did not keep additional appointments. Tr. at 536. On June 16, 1998 Dr. Sliwa wrote to Mark Doyle of Disability Determination Services that Plaintiff did not have any work related limitations. Tr. at 492.

At the request of Disability Determination Services, Plaintiff saw Juan A. Aquino, Ph.D. on February 5, 1998 to assess her intellectual functioning and ability to handle funds. Tr. at 439–43. Plaintiff scored a verbal IQ of 76, a performance IQ of 77, and a full scale IQ of 75, all within the borderline range of intelligence. Tr. at 441. Dr. Aquino expressed doubt about the validity of the scores because Plaintiff "did not appear very invested in the task at hand and at times would give up without appearing to put out a good effort." Dr. Aquino wrote that although Plaintiff had the intelligence to manage her funds, he was concerned about her level of maturity and responsibility. He wrote that although Plaintiff was able to understand simple and moderately complex instructions, immature behavior and nonconforming tendencies may compromise her ability to follow through. Tr. at 442.

On April 2, 1998, Jane Bibber, Ph.D. completed a mental residual functional capacity form. Among the items that were rated as "moderately limited" were: the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and, the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest

periods. Tr. at 486–87. See also Tr. 505–06. A Psychiatric Review Technique form completed by Norman A. Scott, Ph. D., states Plaintiff's case should be rated based on mental retardation and autism and on personality disorders. On part B of the form Dr. Scott stated, among other things that Plaintiff would often have deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. Tr. at 503.

## DISCUSSION

 The standard of review by a Court of a Social Security Disability case is well known:

> Our role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Prosch v. Apfel,* 201 F.3d 1010, 1012 (8th Cir.2000). Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *Id.* In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel,* 212 F.3d, 433, 436 (8th Cir.2000). As long as there is substantial evidence on the record as a whole to support the commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, *id.,* or because we would have decided the case differently, *Browning v. Sullivan,* 958 F.2d 817, 822 (8th Cir.1992).

*Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001). Nevertheless, when the clear weight of the evidence points to a conclusion that the claimant is disabled, and where further hearings would only delay the receipt of benefits, an order granting benefits is appropriate. *Hutsell* at 714, citing *Parsons v. Heckler,* 739 F.2d 1334, 1341 (8th Cir.1984). In *Gavin v.*

*Heckler,* 811 F.2d 1195, 1199 (8th Cir. 1987), the Court of Appeals instructed district courts that the "substantial evidence on the record as a whole" test requires the court to take into consideration the evidence both supporting and detracting from the agency's decision and apply a balancing test to the evidence which is contradictory.

 In the case at bar, the most thorough evaluation of Plaintiff's ability to work was done by Dr. Milani. The doctor administered numerous psychological instruments which were given specifically to assess Plaintiff's ability to work. Like most doctors who have seen Plaintiff, Dr. Milani diagnosed attention deficit hyperactivity disorder and explained that this illness accounts for Plaintiff's inability to stay focused and her appearance of being bored and disinterested. Dr. Milani was the only psychologist to administer an MMPI which was strongly suggestive of schizophrenia. When asked to opine on Plaintiff's ability to function in a work environment, Dr. Milani stated that Plaintiff would have no useful ability to, among other things, deal with work stress or to behave in an emotionally stable manner. In Dr. Milani's opinion, Plaintiff is also limited in several other areas of work related function detailed above. Dr. Milani's opinion of Plaintiff's ability to work is consistent with the psychologists who reviewed the reports of earlier evaluations and stated that Plaintiff is limited in her ability to complete tasks in a timely manner, and to complete work days and work weeks without interruptions from psychologically based symptoms. Dr. Milani's Mental RFC form is also consistent with her Axis V diagnoses of 40. According to the Diagnostic and Statistical Manual of Mental Disorders Fourth Edition (DSM—IV), a GAF rating of 40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical,

obscure, or irrelevant) Or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school)." For all these reason, therefore, Dr. Milani's evaluation is entitled to great weight in this analysis.

On the other side of the scale is the opinion of Dr. Sliwa who opined that Plaintiff had no work related limitations. Unlike Dr. Milani, however, Dr. Sliwa did not administer psychological testing and his opinion was based on three visits. Likewise, Dr. Aquino was asked only to comment on Plaintiff's intellectual functioning and ability to handle funds. Although the IQ sores vary between tests, it appears that Plaintiff functions in the borderline range of intelligence and that her performance IQ is higher than her verbal IQ. While Dr. Aquino was of the opinion that Plaintiff had the intellectual ability to manage her funds, he had serious questions about her ability to use good judgment when handling money.

■ In the Commissioner's brief, the Court is told that upon remand the ALJ will be instructed to proceed to step five of the sequential evaluation. At this step, the burden is on the Commissioner to come forward with medical evidence that Plaintiff has the ability to work and that jobs exist in significant numbers in the national economy that such a person can do in the impaired condition. In *Lauer v. Apfel*, 245 F.3d 700, 703–04 (8th Cir.2001), the Court wrote:

> Although the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence," *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir.2000), we have also stated that a "claimant's residual functional capacity is a medical ques-

tion," *Singh v. Apfel*, 222 F.3d at 451 (8th Cir.2000). "[S]ome medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir.2000) (*per curiam*), must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace," *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir.2000).

In *Rhines v. Harris*, 634 F.2d 1076, 1079 (8th Cir.1980) the Court wrote that employers are concerned with substantial capacity, psychological stability, and steady attendance. The Court said that although the Commissioner need not find a specific job for a claimant, there must be a showing that the claimant can realistically perform in existing employment.

In the opinion of the Court, the Commissioner has failed to meet his burden in the case *sub judice*. Substantial evidence in this record supports a finding that while Plaintiff may have the physical ability to work, and the intellectual capacity for work activity, other psychological abnormalities make that possibility non-existent. As stated above, where the evidence supports only one conclusion, i.e. that the claimant is disabled, a reversal with an order for an award of benefits is the appropriate remedy.

## CONCLUSION AND DECISION

The Court holds that Commissioner's decision is not supported by substantial evidence on the record as a whole. The Court finds that the evidence in this record is transparently one sided against the Commissioner's decision. *See Bradley v. Bowen*, 660 F.Supp. 276, 279 (W.D.Ark. 1987). The medical evidence establishes that Plaintiff does not have the residual functional capacity to work any job in the national economy. A remand to take additional evidence would only delay the re-

ceipt of benefits to which Plaintiff is clearly entitled. Therefore, reversal with an award of benefits is the appropriate remedy. *Parsons v. Heckler,* 739 F.2d 1334, 1341 (8th Cir.1984).

Defendant's motion to remand the case to take further evidence is denied. **This cause is remanded to the Commissioner for computation and payment of benefits.** The judgment to be entered will trigger the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993). *See also, McDannel v. Apfel,* 78 F.Supp.2d 944 (S.D.Iowa 1999), and LR 54.2(b).

IT IS SO ORDERED.