Joseph M. CLAYTON, Plaintiff,

v.

Carolyn W. COLVIN, Acting Commissioner of Social Security, Defendant.

Civil Action No. 12–CV–01232–WGY.

United States District Court, N.D. New York.

Signed April 10, 2015.

Filed April 14, 2015.

---

Steven R. Dolson, Law Offices of Steven R. Dolson, Syracuse, NY, Kenneth R. Hiller, Law Offices of Kenneth Hiller, PLLC, Amherst, NY, for Plaintiff.

Tomasina Digrigoli, Social Security Administration, New York, NY, for Defendant.

## MEMORANDUM & ORDER

WILLIAM G. YOUNG, District Judge.[1]

## I. INTRODUCTION

The Plaintiff Joseph M. Clayton ("Clayton") brings this action under 42 U.S.C. § 405(g) against Carolyn W. Colvin, the Acting Commissioner of the Social Security Administration (the "Commissioner"),[2] seeking the reversal of her determination that he is not entitled to disability insurance benefits and supplemental security income under Titles II and XVI. *See* Compl., ECF No. 1.

### A. Procedural Posture

Clayton first applied for disability insurance benefits and supplemental security

---

**1.** Of the District of Massachusetts, sitting by designation. *See* Order Reassigning Case, June 25, 2013, ECF No. 17.

**2.** In the original complaint and in Clayton's briefing, the defendant is simply identified as "Commissioner of Social Security." Compl., ECF No. 1; Br., ECF No. 13. While Michael

Astrue served in this position in the early stages of this litigation, *see* Def.'s Answer, ECF No. 9, the role is presently filled by Carolyn W. Colvin, who serves in an acting capacity, *see* Def.'s Br. Pursuant General Order No. 18, ECF No. 15.

income on January 8, 2009, alleging that his disability began on August 1, 2007. Social Security Admin. R./Tr. ("Admin. R.") 62–63, ECF No. 11.[3] On July 23, 2009, both of these claims were denied. *Id.* at 42. At Clayton's request, *id.* at 38, a hearing reviewing this initial decision was held before Administrative Law Judge Elizabeth W. Koennecke (the "hearing officer") on September 7, 2010, *id.* at 270–85. Because Clayton and his attorney had not yet obtained a report from Clayton's treating physician, the record was held open for another two weeks, until September 21, 2010. *Id.* at 274–75. The hearing officer issued a decision denying Clayton's claims for benefits on October 19, 2010. *Id.* at 10–18. Although Clayton requested review of the hearing officer's decision, *id.* at 41, the Appeals Council of the Social Security Administration denied such review on June 4, 2012, rendering the hearing officer's decision the final disability determination of the Commissioner, *id.* at 3.

Following the Appeals Council's rejection of his petition for review, Clayton filed the instant action in the U.S. District Court for the Northern District of New York on August 1, 2012. Compl. The Commissioner filed an answer on December 3 of that same year. Def.'s Answer, ECF No. 9. The same day, the Commissioner docketed a copy of the administrative record. Admin. R. Clayton filed a memorandum of law in support of his complaint on January 3, 2013, Pl.'s Br. Mem. Law ("Clayton's Br."), ECF No. 13, and the Commissioner filed her memorandum on February 14, Def.'s Br. Pursuant Gen-

eral Order No. 18 ("Comm'r's Br."), ECF No. 15.[4] The case was reassigned to this Court on June 25, 2013. Order Reassigning Case, June 25, 2013, ECF No. 17.

## B. Facts

A large portion of the facts found in the record are not relevant to this decision. In the interest of clarity, concision, and the privacy of the parties involved, this opinion will only lay out those facts necessary to understand the legal conclusions below.

Clayton was born on November 5, 1983. Admin. R. 40. He worked in the shipping department of a drugstore warehouse until the summer of 2008, when he began to experience panic attacks. *Id.* at 83, 276–77. Following one particularly bad episode, he sought treatment at St. Joseph's Hospital Healthcare ("St. Joseph's"). *Id.* at 277–78. The record shows that between December 2007 and June 2009, Clayton received treatment for agoraphobia, panic attacks, and major depressive affective disorder from multiple doctors at St. Joseph's, including Dr. Joseph Zollo ("Dr. Zollo"). *Id.* at 140–69.

After Clayton applied for social security disability benefits, he underwent a one-time consultative psychological evaluation with Dr. Dennis M. Noia, Ph.D. ("Dr. Noia") on June 25, 2009. *Id.* at 170–73. On July 17, 2009, Dr. T. Inman–Dundon ("Dr. Inman–Dundon"), working for the State Disability Determination Services, reviewed Clayton's medical history (though she did not meet with Clayton in person) and submitted a psychiatric review tech-

---

**3.** Possibly due to its length, the administrative record in this case is split across two ECF entries: pages 1 through 225 of the record appear at ECF No. 11, while pages 226 through 285 appear at ECF No. 11-1.

**4.** Pursuant to the Northern District of New York's General Order 18 governing appeals

from decisions of the Social Security Administration, these memoranda of law are treated as though "both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure." *Social Security Action—Case Assignment Form* 3, ECF No. 3.

nique form and a mental residual functional capacity assessment. *Id.* at 17, 174–191.

Joined by his attorney, Clayton attended an oral hearing regarding his claim before the hearing officer on September 7, 2010. *Id.* at 270. At that time, Clayton's attorney told the hearing officer that he had requested a residual functional capacity report from Dr. Zollo, but because Dr. Zollo was on vacation, the report had not been received before the hearing. *Id.* at 274. Accordingly, the hearing officer permitted the record to remain open for another two weeks—until September 21—to allow Clayton to submit Dr. Zollo's evaluation. *Id.* at 275. Clayton's attorney did eventually fax the report, which was signed on September 16, *id.* at 269, but it is not entirely clear when: while the fax cover sheet, the request for review by the Appeals Council, and the briefing before this Court state that the fax was sent on September 18, *id.* at 41, 263; Clayton's Br. 4, the version of the report that appears in the record bears a marking at the top of the page suggesting it was not received until September 23, *see* Admin. R. 263–69. Regardless of whether it was sent before or after the deadline, however, the hearing officer wrote in her decision on October 19 that she had not received the report at any point through the date of that opinion. *Id.* at 17.

## II. LEGAL STANDARD

### A. Standard of Review

In a case seeking review of a decision of the Commissioner of Social Security, this Court must evaluate whether the decision was based on the correct legal standards and whether it was supported by substantial evidence. 42 U.S.C. § 405(g); *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998). In this context, the substantial evidence standard requires "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)) (internal quotation marks omitted).

■■■■ Because social security disability determinations are a non-adversarial process, the substantial evidence standard is concerned not merely with the content of the record, but also with the process by which the record is created. The Second Circuit has ruled that a hearing officer has an affirmative duty to develop the record before her, even when a claimant is represented by counsel. *Id.* This duty "is enhanced when the disability in question is a psychiatric impairment," as mental illness may make it more difficult for claimants adequately to assemble the record themselves. *See Lacava v. Astrue*, No. 11–CV–7727 (WHP)(SN), 2012 WL 6621731, at *11 (S.D.N.Y. Nov. 27, 2012). If a hearing officer notes any clear gaps in the record, her duty may require her to fill those gaps by seeking out more information from treating sources sua sponte. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir.1999) (citing *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir.1998); *Hartnett v. Apfel*, 21 F.Supp.2d 217, 221 (E.D.N.Y.1998)).

■■ In a case where there are such gaps in the record and further findings "would so plainly help to assure the proper disposition of [the] [disability] claim," remand is appropriate. *Butts v. Barnhart*, 388 F.3d 377, 385 (2d Cir.2004) (first alteration in original) (quoting *Rosa*, 168 F.3d at 83) (internal quotation marks omitted), *as amended on reh'g in part*, 416 F.3d 101 (2d Cir.2005). Reversal, on the other hand, is only appropriate when "the record is 'sufficiently complete' and provides 'persuasive evidence of total disability,'" thus

rendering further proceedings pointless." *Manago v. Barnhart,* 321 F.Supp.2d 559, 568 (E.D.N.Y.2004) (quoting *Williams v. Apfel,* 204 F.3d 48, 50 (2d Cir.2000)).

## B. Social Security Disability Standard

### 1. Five–Step Review Procedure

In order to receive disability benefits, a claimant must have a qualifying disability. The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has promulgated a regulation laying out a five-step procedure for determining whether a claimant is disabled within the meaning of this definition. 20 C.F.R. § 404.1520(a)(4). In order, a hearing officer must decide (1) whether the claimant is presently engaged in substantial gainful activity; (2) whether the claimant has a severe medical impairment; (3) whether the claimant's impairment meets or equals one of a list of disabilities enumerated in 20 C.F.R. Part 404, Subpart P, Appendix 1, thus entitling them to a finding that they are per se disabled; (4) whether the claimant has the residual functional capacity to perform their past work; and (5) whether the claimant has the residual functional capacity to perform other work that exists in significant numbers in the national economy. *Id.* § 404.1520(a)(4)(i)-(v). If the hearing officer is able to make a dispositive disability determination at any step in the process—specifically, if she finds against the claimant at steps one, two, or four, or finds in favor of the claimant at step three—she is not required to move on to any subsequent steps. *Id.* § 404.1520(a)(4). The claimant bears the burden of proof for each of the first four steps, but the burden shifts to the Commissioner at the fifth step. *Rosa,* 168 F.3d at 77–78.

### 2. Treating Physician Rule

▉ When evaluating a disability claim, a hearing officer is obligated to follow the so-called "treating physician rule," meaning that she must give controlling weight to the opinion of a claimant's treating physician regarding the nature and severity of a claimant's impairment if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue,* 537 F.3d 117, 128 (2d Cir.2008). If a hearing officer decides that a treating physician's opinion does not meet this standard, she must then determine the proper weight to give that opinion in her analysis by evaluating a series of factors: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." *Brickhouse v. Astrue,* 331 Fed.Appx. 875, 877 (2d Cir.2009); *see also* 20 C.F.R. § 404.1527(c). "After considering the above factors, the [hearing officer] must 'comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion.'" *Burgess,* 537 F.3d at 129 (quoting *Halloran v. Barnhart,* 362 F.3d 28, 33 (2d Cir.2004)); *see also* 20 C.F.R. § 416.927(c)(2). If the hearing officer's stated justifications for the weight given to a treating physician's opinion are not adequate, remand may be appropriate. *Burgess,* 537 F.3d at 129–30.

## III. HEARING OFFICER'S DECISION

The hearing officer followed the five-step procedure detailed above for analyzing disability benefit claims. First, she determined that Clayton had not engaged in any substantial gainful activity since his alleged disability onset date. Admin. R. 12. Second, she found that Clayton suffered from a severe impairment—specifically an anxiety disorder, variously characterized—based on a thorough review of his medical records from St. Joseph's and from his consultative examination with Dr. Noia. *Id.* at 12–15. Third, the hearing officer compared this impairment to those enumerated in the relevant regulations and found that Clayton was not entitled to a finding that he was per se disabled. *Id.* at 15. Before proceeding to step four, the hearing officer evaluated Clayton's residual functional capacity and found that he was capable of "perform[ing] a full range of work at all exertional levels." *Id.* at 16. In addition to relying on Clayton's own testimony at the hearing, *id.* at 17–18, she made this determination by giving "decreased weight" to a report from Clayton's social worker at St. Joseph's, *id.* at 16, "significant weight" to Dr. Noia's consultative report, *id.*, and "some weight" to the report Dr. Inman–Dundon created based on Clayton's records, *id.* at 17. Regarding Dr. Zollo, the hearing officer noted that "[a]lthough the record had been held open to obtain an assessment of residual functional capacity from the claimant's treating psychiatrist, no such report was received through the date of this decision." *Id.* Moving to step four, the hearing officer then found that Clayton could perform his past relevant work as a warehouse employee and was thus not disabled. *Id.* at 18.

## IV. ANALYSIS

Clayton posits two grounds for the reversal and remand of the hearing officer's decision: first, that she failed properly to apply the treating physician rule, and second, that she improperly used the absence of Dr. Zollo's report to give increased weight to Dr. Noia's report in making determinations that should not be controlled by medical sources. Clayton's Br. 1, 3. In response, the Commissioner argues that the hearing officer accounted for Dr. Zollo's perspective by way of a thorough review of his treatment notes, Comm'r's Br. 9–11, and that the weight given Dr. Noia's and Dr. Inman–Dundon's reports was appropriate, *id.* at 11–14.

### A. Application of Treating Physician Rule

The Court sees merit in Clayton's contention that the hearing officer did not properly apply the treating physician rule. As stated above, a treating physician's opinion ought be treated as controlling except when it is inconsistent with the record; if a hearing officer declines to give such an opinion controlling weight, she must explicitly state the reasons for the weight she ultimately does give the treating physician. *See, e.g., Burgess,* 537 F.3d at 129. Here, the hearing officer gave no weight to Dr. Zollo's report because she said that she had not received it in any form by October 19, 2010, the date of her opinion. Admin. R. 17. This contention, however, seems flatly contradicted by the record (provided by the Commissioner, no less), which suggests that the report was submitted on either September 18 or September 23, 2010. *Id.* at 263–69. Even were this Court to make an inference against Clayton and assume that the report was submitted on September 23, two days after the record closed, *id.* at 275, it remains clear that Dr. Zollo's report was in the possession of the Social Security Administration nearly a month before the hearing officer handed down

her decision. Considering this, the Court refuses to accept "we didn't have it" as a permissible reason not to give Dr. Zollo's opinion controlling weight.

■ This ruling is buttressed by the hearing officer's affirmative duty to develop the record, which is particularly serious in cases such as this one in which the claimant alleges a mental impairment. *Lacava*, 2012 WL 6621731 at *11. The hearing officer knew on September 7, 2010, that Dr. Zollo's report was forthcoming, *see* Admin. R. 274–75, and accordingly, it was incumbent upon her to ensure that she had received and considered it. For her simply to note in her opinion more than a month later that this report was never received represents an abdication of this duty.

■ In response, the Commissioner argues that the hearing officer did examine Dr. Zollo's treatment notes in making her decision, suggesting that the treating physician's opinion was sufficiently considered. Comm'r's Br. 9–11 (citing portions of the hearing officer's decision recounting Dr. Zollo's medical evidence). Given the context in which the hearing officer discussed Dr. Zollo's medical evidence, however, the Court considers this unpersuasive. The hearing officer only discussed Dr. Zollo's records of his treatment of Clayton at step two of the disability determination, which evaluates whether the claimant has a severe impairment. *See* Admin. R. 12–15. This case was decided at step four, where the hearing officer determined that Clayton was able to perform his past relevant work—and at this step the hearing officer only mentioned Dr. Zollo (not even by name) to note that his residual functional capacity report had not been received. *See id.* at 16–18 (describing the weight given to Dr. Noia's and Dr. Inman–Dundon's reports, then finding against Clayton at step four). Even were this Court to

accept that consideration of Dr. Zollo's treatment notes without looking at his report would satisfy the treating physician rule, at no point in this step of the analysis did the hearing officer actually address the weight given to these notes, as the rule requires.

Indeed, the Commissioner only addresses the hearing officer's non-receipt of Dr. Zollo's report in a footnote, observing that the Appeals Council's decision not to review the hearing officer's opinion after the Appeals Council saw the report in question suggests that the report provides no basis on which to reverse or remand the hearing officer's disability determination. Comm'r's Br. 10–11 & n. 3, This argument is specious. After all, no social security case makes it to federal district court in the first place without a decision by the Appeals Council that there is no basis for overturning the hearing officer—and that hardly stops Article III courts from ruling that there is, in fact, such a reason. *See, e.g., Burgess*, 537 F.3d at 132; *Brickhouse*, 331 Fed.Appx. at 878.

■ The only question that remains, then, is whether this Court ought reverse the hearing officer's decision or merely vacate and remand. As stated above, reversal is only warranted when "the record is sufficiently complete and provides persuasive evidence of total disability, thus rendering further proceedings pointless." *Manago*, 321 F.Supp.2d at 568 (internal quotation marks omitted). The Court rules that this standard is not met. Dr. Zollo's report is not conclusive: while he notes that Clayton is "seriously limited" in many mental abilities and aptitudes relevant to work (and is borderline "unable to meet competitive standards" in his ability to accept instructions and respond appropriately to criticism from supervisors), he also found that Clayton has unlimited or very good abilities in several other capaci-

ties and concluded that Clayton "will need to ease back into the workforce and gradually increase responsibility" rather than finding that Clayton was wholly unable to work. Admin. R. 267–69. This evidence is sufficiently equivocal that it is best evaluated by the hearing officer in the context of the other evidence rather than by this Court. Accordingly, remand is appropriate.

### B. Reliance on Medical Source for Residual Functional Capacity Determination

While the Court is persuaded by Clayton's first argument, his second ground for reversal and remand is much more opaque. As best the Court can tell, Clayton makes two points: first, that the hearing officer wrongly treated the absence of Dr. Zollo's report from the record as substantive evidence that Clayton was not disabled, *see* Clayton's Br. 6, and second, that this led her to rely on Dr. Noia's and Dr. Inman–Dundon's reports for conclusions that should be administrative rather than legal in nature, *see id.* at 7–8, While the Court has already determined that the case ought be remanded, thus rendering these arguments largely unnecessary, it offers some analysis of these arguments as well in the hope that it may guide the hearing officer in rehearing the matter.

Regarding this first point, Clayton highlights the part of the hearing officer's opinion where she writes that "no physician, treating or otherwise, has concluded that the claimant is totally disabled or has provided medical assessments to that affect" [sic] and points to Eighth Circuit case law stating that "[a] treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting [a hearing officer]'s functional capacity determination." *Id.* at 6 (citing *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir.

2001)). This, however, appears to misread the hearing officer's decision: rather than using the lack of medical evidence as substantive evidence, the hearing officer highlighted the absence of this kind of evidence merely as a marker that she considered the evidence she had before her. This perspective on the hearing officer's wording is reinforced by the fact that she spends two pages grounding her decision on the affirmative evidence seen in Dr. Noia's and Dr. Inman–Dundon's reports and on Clayton's own testimony, while she spends just a few lines observing the lack of this kind of evidence.

 As to the second point, Clayton argues that the hearing officer wrongly relied on Dr. Noia and Dr. Inman–Dundon to determine whether Clayton was disabled, as that final determination should be made by the hearing officer herself rather than by medical sources. Clayton's Br. 7 (citing 20 C.F.R. §§ 404.1527(e), 416.927(e)); *id.* at 8 (arguing that the hearing officer erred by "requiring [Drs. Noia and Inman–Dundon] to provide a definitive statement on issues that are administrative in nature"); *see also* Admin. R. 16–17 (describing how these doctors' opinions fit into the disability determination). This, too, strikes the Court as a misreading of the hearing officer's decision. The hearing officer did not substitute the judgment of these doctors for her own, thus allowing medical sources to make administrative decisions. Instead, she (properly) evaluated the merits of this medical evidence and used it to make her own determination. *See* Admin. R. 18. Accordingly, this argument cannot support reversal or remand.

## V. CONCLUSION

For the foregoing reasons, the Court REMANDS the case back to the hearing

officer for further proceedings consistent with this opinion.

**SO ORDERED.**