**Nelson McINNIS, Plaintiff,**

v.

**Jo Anne B. BARNHART, Commissioner of Social Security, Defendant.**

**No. C03–4040–MWB.**

United States District Court, N.D. Iowa, Western Division.

Sept. 27, 2004.

Thomas A. Krause, West Des Moines, IA, for Plaintiff.

## ORDER REGARDING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .913

II. PROCEDURAL HISTORY AND BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . .914

III. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .915
    A. Standards of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .915
    B. The Commissioner's Objection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .916
    C. Discussion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .916
        1. SSA Regulations Governing Overpayment . . . . . . . . . . . . . . . . . . . . . . . . . .916
        2. "Not Without Fault" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .918

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .921

## I. INTRODUCTION

The plaintiff, Nelson McInnis ("McInnis") seeks review of the Commissioner's decision denying his request for waiver of overpayment recovery of disability insurance ("DI") benefits under Title II of the Social Security Act ("the Act"), § 42 U.S.C. 401 et seq. United States Magistrate Judge Paul A. Zoss reviewed McInnis's appeal and in his Report and Recommendation found that the record did not contain substantial evidence to support the Commissioner's decision that McInnis "was not without fault." Judge Zoss recommends that McInnis's case be reversed and remanded for development of the record and consideration of further evidence. The Commissioner filed her objection to the Magistrate Judge's Report and Recommendation and argues that there is substantial evidence in the record as a whole to support the ALJ's decision. In the alternative, the Commissioner argues that should the court determine there is not substantial evidence in the record as a whole to support the ALJ's decision that

this case should be remanded for further development of the record.

## II. PROCEDURAL HISTORY AND BACKGROUND

McInnis applied for disability insurance due to an intellectual impairment. His claim was granted and benefits awarded effective January 1, 1989. (R. at 39). An interim review was conducted regarding McInnis's work status in 1995. In 1995, the Social Security Administration ("SSA") conducted a review of McInnis's claim of disability and determined that even though McInnis had completed a nine-month trial work period that the work was not at substantial gainful activity ("SGA") level. The SSA advised McInnis that his benefits would continue because he was not at SGA but that he must report any change in his duties or pay:

THINGS TO REMEMBER

You must tell us right away about any changes that may affect your benefits. If you don't, you may have to repay any benefits you are not due.

(R. at 42). The letter also stated:

After we count your 9 trial work months, your right to monthly payments will still continue if you are disabled and your average earnings are not over:

- $500 a month beginning in January 1990, or
- $300 a month before January 1990.

(R. at 44). The letter explained that McInnis would continue receiving disability payments as long as his average earnings were not over the per month limitation set by the SSA. That amount was $300 per month before January 1990 and in January 1990 the amount was raised to $500 per month. (R. at 44–45). The monthly earnings limitation was increased to $700 per month in June 1999. The

record shows that between June 1998 and July 1999, McInnis earned over the per month earnings limitation set by the SSA. (R. at 60–61). As explained in the Report and Recommendation, the SSA began its inquiry because of the monthly earnings amount reported by McInnis during a review of his claim. On May 5, 2000, the SSA sent an earnings form to McInnis to fill out and return but McInnis never completed that form. The SSA then sent the form again stating that if McInnis did not complete the form and return it in fifteen days that the SSA might contact his employer(s). On May 31, 2000, it appears McInnis spoke with someone at the SSA who completed the form based on the information McInnis provided. (R. at 52–55). Based on this information, the SSA determined that McInnis's period of disability should have ended in June 1998. Beginning in June 1998 McInnis had monthly earnings over the $500 monthly limitation. (R. at 69–71). The SSA notified McInnis that he was overpaid in the amount of $25,723.30. (R. at 74). Later, the SSA determined that McInnis was overpaid in the amount of $33,609.30.[1] (R. 82, 84). McInnis requested a waiver of the overpayment.

On November 6, 2000, the SSA found McInnis "at fault" for not reporting and notifying the SSA that he was earning over the limited monthly amount and for accepting disability payments even though he was exceeding the set monthly limitation. Further, the SSA found that McInnis was fully aware of his reporting responsibility and that he failed to report a change in his duties and pay. (R. at 82–83). The SSA denied McInnis's request for waiver. (R. 83). On December 29, 2000, McInnis requested reconsideration.

---

1. McInnis testified he received approximately $1,200 per month and that his son received approximately $250 or $300. In addition, McInnis's wife received approximately $375. (R. at 26–27).

The request for reconsideration was denied and on January 3, 2001, McInnis requested a hearing before an ALJ. A hearing was held on June 20, 2001. On August 27, 2001, the ALJ issued his opinion and determined that McInnis was "not without fault" in causing the overpayment of benefits. McInnis's request for waiver of recovery of overpayment was again denied. (R. at 16). On March 13, 2003, the Appeals Counsel denied McInnis's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 3–5).

McInnis filed a timely complaint in this court on May 14, 2003, seeking judicial review of the ALJ's decision. (Doc. No. 1). This matter was referred to the Judge Zoss. Judge Zoss determined that the ALJ failed to develop the record regarding McInnis's intelligence, and his mental and educational limitations. Judge Zoss stated that the issue was whether McInnis's disability prevented him from understanding and complying with the SSA's reporting requirements. McInnis claimed his disability prevented him from understanding that he had to report to the SSA earnings above the set limitation. Judge Zoss found that the ALJ offered no evidence to refute McInnis's argument. Judge Zoss further found that the ALJ should have made a credibility determination and asserted that the ALJ erred when he concluded that McInnis's wife should have known and reported to the SSA that McInnis was over the set monthly limitation. Judge Zoss found there was nothing in the record to support such a conclusion. The Commissioner filed her objection to the Report and Recommendation arguing there was substantial evidence to support a the ALJ's decision but if the court found there was not substantial evidence in the record to support the ALJ's decision that the proper finding would be to remand the case for further development of the administrative record. McInnis filed no reply to the Commissioner's objections.

## III. LEGAL ANALYSIS

### A. Standards of Review

The standard of review to be applied by the district court to a report and recommendation of a magistrate judge is established by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].

28 U.S.C. § 636(b)(1). The Eighth Circuit Court of Appeals has repeatedly held that it is reversible error for the district court to fail to conduct a *de novo* review of a magistrate judge's report where such review is required. *See, e.g., Hosna v. Groose,* 80 F.3d 298, 306 (8th Cir.1996) (citing 28 U.S.C. § 636(b)(1)); *Grinder v. Gammon,* 73 F.3d 793, 795 (8th Cir.1996) (citing *Belk v. Purkett,* 15 F.3d 803, 815 (8th Cir.1994)). The Commissioner has made specific, timely objections in this case. Therefore, *de novo* review of "those portions of the report or specified proposed findings or recommendations to which objection is made" is required here. *See* 28 U.S.C. § 636(b)(1).

The standard of judicial review for cases involving the denial of social security benefits is based on 42 U.S.C. § 405(g), which provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." This standard of review was explained by the Eighth Circuit Court of Appeals as follows:

> Our standard of review is narrow. "We will affirm the ALJ's findings if supported by substantial evidence on the record as a whole." *Beckley v. Apfel,* 152 F.3d 1056, 1059 (8th Cir.1998).

"Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support a decision." *Id.* If, after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the Commissioner's decision.

*See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000).

The Eighth Circuit Court of Appeals also has explained, "In reviewing administrative decisions, it is the duty of the Court to evaluate all of the evidence in the record, taking into account whatever in the record fairly detracts from the ALJ's decision." *Hutsell v. Massanari,* 259 F.3d 707, 714 (8th Cir.2001) (quoting *Easter v. Bowen,* 867 F.2d 1128, 1131 (8th Cir.1989)); *Howard v. Massanari,* 255 F.3d 577, 581 (8th Cir.2001) ("In assessing the substantiality of the evidence, we must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it.") (quoting *Black v. Apfel,* 143 F.3d 383, 385 (8th Cir.1998), with internal quotations and citations omitted). Accordingly, in reviewing the record in this case, the court must determine whether substantial evidence in the record as a whole supports the ALJ's decision that McInnis was "not without fault" and that McInnis's request for waiver be denied.

### B. The Commissioner's Objection

The Commissioner objects to Judge Zoss's finding that the ALJ improperly determined that McInnis was "not without fault." The Commissioner asserts that there was substantial evidence in the record as a whole to support the ALJ's finding that McInnis was at fault in receiving the overpayments. The Commissioner asserts that McInnis was aware that there was an earnings limitation and that McInnis knowingly exceeded the set limitation and failed to report to the SSA that he was earning above the set limitation. The Commissioner contends that the ALJ did not need to conduct a credibility analysis. Further, the Commissioner argues that the ALJ properly considered McInnis's wife's knowledge regarding monthly earnings and the impact it would have on McInnis's benefits.

### C. Discussion

### 1. SSA Regulations Governing Overpayment

The SSA has regulations governing the overpayment of benefits. When a claimant has received an overpayment of Social Security benefits, 42 U.S.C. § 404(a) provides:

(a) Procedure for adjustment or recovery

1) Whenever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made, under regulations prescribed by the Commissioner of Social Security, as follows:

(A) With respect to payment to a person of more than the correct amount, the Commissioner of Social Security shall decrease any payment under this subchapter to which such overpaid person is entitled, or shall require such overpaid person or his estate to refund the amount in excess of the correct amount, or shall decrease any payment under this subchapter payable to his estate or to any other person on the basis of the wages and self-employment income which were the basis of the payments to such overpaid person, or shall obtain recovery by means of reduction in tax refunds based on notice to the Secretary of the Treasury as permitted under sec-

tion 3720A of Title 31, or shall apply any combination of the foregoing.

42 U.S.C. § 404(a). The regulations require claimants that have received overpayments to repay the overpayments. However, the SSA regulations make a distinction between claimants that are found to be "not without fault" and claimants that are found to be "without fault" in receiving overpayment, 42 U.S.C. § 404(b) states, in pertinent part:

> (b) No recovery from persons without fault
>
> In any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience. In making for purposes of this subsection any determination of whether any individual is without fault, the Commissioner of Social Security shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have (including any lack of facility with the English language).

*Id.* When a claimant is found to be "not without fault" the claimant must repay the overpayment. In addition, as noted in the Report and Recommendation, a finding of "not without fault" does not require bad faith on the claimant's part. An "honest mistake may be sufficient to constitute fault." *Center v. Schweiker,* 704 F.2d 678, 680 (2nd Cir.1983). Further, as noted by Judge Zoss in the Report and Recommendation, "The fault determination requires a reasonable person to be viewed in the claimant's own circumstances and with whatever mental and physical limitations the claimant might have." *Harrison v. Heckler,* 746 F.2d 480, 482 (9th Cir.1984). The Eighth Circuit Court of Appeals has determined that when there is no actual evidence that a claimant received notification or testifies not remembering receiving notification of the SSA guideline limitation then the claimant is "without fault." *See Wilcutts v. Apfel,* 143 F.3d 1134 (8th Cir. 1998). What constitutes fault on the part of an overpaid claimant depends upon whether the facts show that the incorrect payment resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect; or
>
> (b) Failure to furnish information which he knew or should have known to be material; or
>
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

20 C.F.R. § 404.507.

However, if the claimant is found to be "without fault" the claimant will have to repay the overpayment unless "recovery would defeat the purpose of this subchapter or would be against equity and good conscience." The SSA provides for mandatory waiver of overpayments if a claimant is "without fault" in receiving the overpayment and recovery either defeats the purpose of the Act or would be against equity and good conscience. Specifically, the regulations provide:

> (c) When waiver is requested, the individual gives SSA information to support his/her contention that he/she is without fault in causing the overpayment (see § 404.507) and that adjustment or recovery would either defeat the purpose of title II of the Act (see § 404.508) or be against equity and good conscience (see § 404.509). That information, along with supporting documentation, is reviewed to determine if waiver can be approved. If waiver cannot be approved after this review, the individual is noti-

fied in writing and given the dates, times and place of the file review and personal conference; the procedure for reviewing the claims file prior to the personal conference; the procedure for seeking a change in the scheduled dates, times, and/or place; and all other information necessary to fully inform the individual about the personal conference. The file review is always scheduled at least 5 days before the personal conference.

20 C.F.R. § 404.506(c). Therefore, if a claimant is found to be "not without fault" he/she will be required to repay the overpayment and even if the claimant is found to be "without fault" in causing the overpayment the regulations provide that the claimant may still be required to repay the overpayment. If a claimant has requested a waiver and the SSA determines that no waiver will be allowed, the SSA's determination must be supported by substantial evidence in order to be upheld on judicial review. 42 U.S.C. § 405(g). With the regulations as a guide, the court now considers the Commissioner's objection to the Report and Recommendation.

## 2. "Not Without Fault"

The Commissioner objects to Judge Zoss's finding that the ALJ improperly determined that McInnis was "not without fault" in causing the overpayment. The Commissioner asserts that substantial evidence in the record as a whole supports the ALJ's decision that McInnis was "not without fault." In the Report and Recommendation, Judge Zoss agreed with McInnis that the ALJ failed to give proper consideration to McInnis's mental and educational limitations; and, failed to develop the record fully and fairly. Judge Zoss found that the question in this case was whether McInnis's disability prevented him from understanding and complying with his reporting requirement. The Commissioner contends the record contains substantial evidence in the record as a whole to support a finding that McInnis had the ability to understand and follow the SSA's regulations and was "not without fault" in failing to comply with the SSA's regulations.

In this case, it is undisputed that from June 1998 through July 1999, McInnis's earnings were over the monthly limitation set by the SSA. (R. at 57–64). It is also undisputed that in 1995 the SSA sent McInnis a letter advising him that his disability would continue and that review of his disability claim was an ongoing process. (R. at 41–45). The notification letter contained a section entitled "THINGS TO REMEMBER" and the sentence "You must tell us right away about any changes that may affect your benefits." (R. at 42). The letter stated that McInnis had completed a nine-month trial work period and that he could not earn over the monthly limit set by the SSA. (R. at 44). McInnis began receiving disability insurance benefits in January 1989. (R. at 39). The record reflects that approximately nine and one-half years after his initial receipt of benefits, plaintiff began earning over the monthly limit. He earned $17.50 over the limit set by the SSA in June 1998, however, the record indicates that his monthly earning continued to increase and in May 1999 he earned $436 over the limit set by the SSA. (R. at 60–61). It is clear that substantial evidence in the record as a whole supports a finding that McInnis was knowingly making over the limit set by the SSA and that McInnis understood that his earnings were to stay below the set limit if he was to continue receiving benefits.

At the hearing, McInnis's attorney stated:

So Mr. McInnis was out on his own, looking for work and eventually began work with the Metz Baking Company here. And, yes, he was generally aware

of the necessity to stay within a certain earnings limit.

(R. at 22–23). The attorney for McInnis also stated that McInnis left his job at Metz Baking because of a vehicular situation that scared him. (R. at 24). However, this is not the testimony provided by McInnis when asked by the ALJ why he quit his job at Metz:

> ALJ: That was just a—somewhere when I read the file—let's see—well, I have a note in here that you—your earnings were never over $500 a month until June of '98 working at Metz—
>
> CLMT: Um-hum.
>
> ALJ:—and then they were over—
>
> CLMT: I started going over, yes. Then I got scared of, you know, that I was—been going over, to lose my Disability, so I quit the job.

(R. at 25). This testimony reveals that McInnis's disability did not prevent him from understanding that there was a set monthly limitation, that he was going over the limitation and that his benefits were at risk. However, McInnis claims his disability prevented him from knowing that he was to report his earnings to the SSA.

> ALJ: What—do you remember back in the period of time involved in this situation, do you remember any time back in the—'95 or around that you were—had conversations with the people at the Social Security Administration?
>
> CLMT: Yes, I think I went over and made sure with the gross earnings that I could make that—while I was on Disability and I tried—like I said—
>
> ALJ: Yeah.
>
> CLMT: —I tried to stay in that means, yes, I did.
>
> ALJ: Were you required to report these earnings to them or did you ever tell them what you were making?
>
> CLMT: I never knew that I had to, so, like I said, I don't read very good, so if

they sent me reports, then I didn't understand it.

> ALJ: I seem to have a note in here—Exhibit number 4—where they said that they had advised you of the earnings record from '94 to '99.
>
> CLMT: Yes, that was after they—when they said that I was making over the amount and that they were starting to, you know—

(R. at 29–31). McInnis admitted that he had conversations with representatives from the SSA. McInnis admitted that he "went over and made sure with[sic] the gross earning that I could make that—while I was on Disability." (R. at 29). Further, he was advised not only by letter but through conversations with the SSA that he was making over the set monthly earnings limitation and that this affected his disability eligibility. In addition, McInnis's testimony confirmed that he knew he could lose his benefits because he was earning over the set limit. There is substantial evidence in the record as a whole that McInnis acknowledged being advised of his earnings record from '94 to '99. Not only did the SSA send McInnis notification letters that explained the guidelines, McInnis testified that he had conversations with SSA representatives regarding the guidelines. Yet, McInnis, with knowledge that he was earning over the set limit, continued to work and continued to exceed the earnings limit set by the SSA. McInnis acknowledged that he knew there was a limit and that he knew and understood enough to be scared that he would lose his disability benefits because he was going over the limit. The crux of this case is whether substantial evidence in the record as a whole supports a finding that McInnis was "not without fault" in receiving his admitted overpayment. McInnis claims the overpayment should be waived because he said he did not know or

understand that he had to report the fact he was earning over the set limit. However, the facts demonstrate McInnis did have the ability to know and understand that there was a set monthly limit and that this was material to whether he would continue receiving benefits. Considering the fact that McInnis had been questioned about his earnings in 1995 and informed by the SSA that his benefits would continue as long as he did not work at SGA level, McInnis should have been aware that his earnings were material and that the SSA would need to know if he was exceeding the set monthly limitation.

The regulations provide that a claimant is "not without fault" if the claimant fails to furnish information which he knew or should have known was material; or the claimant accepts payment which he either knew or could have been expected to know was incorrect. See 20 C.F.R. § 404.507. Per the regulations a person in McInnis position should have been expected to know or understand that his monthly earnings warranted a notice to the SSA or at least an inquiry about any affect that might have on his eligibility. McInnis accepted payment of benefits although he knew or could have been expected to know that going over the set limit ended his right to receive disability benefits. The record is fully and fairly developed on this issue. McInnis's own testimony revealed that he recognized that by going over the limit he would lose his benefits. McInnis acknowledged that he had been contacted in writing by the SSA and had conversations with SSA representatives regarding the earnings limitation guidelines. Rather than adjusting his earnings, McInnis continued to work and earn above the limit set by the SSA.

The court respectfully disagrees with Judge Zoss that the record is not developed enough to determine whether McInnis's disability prevented him from understanding or knowing that the fact that he was earning above the limit was important and he should have contacted the SSA to report his earnings. The fact that McInnis knew there was a limit and accepted payment from the SSA with knowledge and understanding that he was earning above the limit and that his benefits were at risk because he continued to do so is enough to find that McInnis was "not without fault" in receiving the overpayment. Further, McInnis had been notified of the earnings problem because the SSA had contacted him regarding the guideline limitations and advised him he had been going over. It is evident from the record the SSA had warned McInnis that he was going over the set limit and that they would continue to monitor his earnings. The record is clear that McInnis had knowledge and understanding regarding the SSA guidelines concerning the set monthly limitation. He knew he should not earn more than the limit. He knew he was going over the limit. And, he knew that he was receiving benefits even though he was going over the set limit.

However, because of McInnis's contention that his disability prevented him from understanding that he was to report his earnings, the ALJ considered whether McInnis's disability affected his capacity to understand the SSA communications informing him that he had to report any changes that might affect his benefits. The ALJ addressed McInnis's disability and discussed McInnis's physical, mental, educational, and linguistic limitations. (R. at 14–15). The ALJ considered the opinion of Dr. Francis Conway, McInnis's treating psychiatrist, who characterized the claimant as having experienced a "remarkable recovery." In addition, the ALJ found, "even assuming the claimant experienced reading and writing disabilities there is no credible reason on this record why the claimant could not have asked someone for help regarding notices or let-

ters from the SSA received during the relevant time period at issue in this decision." (R. at 15). The ALJ properly followed 20 C.F.R. § 404.507 by considering the effect of McInnis's disability on his capacity to understand the guidelines. The ALJ specifically rejected McInnis's contention that his reading and writing disability made him unable to understand the impact of his earnings on his eligibility. This court agrees with the ALJ. As noted by the ALJ, McInnis's disability did not prevent him from knowing and understanding that if he earned above the limit set by the SSA that he would lose his benefits. McInnis recognized that his earnings were material to his receiving benefits and when his earnings continued going over the limit he should have understood that he should not be receiving further benefits. In fact, when McInnis's own testimony is found credible, McInnis admits that even after being contacted by the SSA and advised that his earnings were going over the limit, he continued to exceed the limit, continued to receive benefits and continued not reporting this information to the SSA. Finally, even construing the record in the light most favorable to McInnis, that he truly did not understand the notification letters, he still failed to seek assistance in reading and understanding the notifications that he acknowledged receiving. Given the substantial evidence in the record as a whole, the court finds it need not address the ALJ's consideration of what McInnis's wife knew, or should have known concerning her husband's failure to report his earnings.

Therefore, the court finds that there is substantial evidence in the record as a whole to support the ALJ's finding that McInnis was "not without fault" in causing the overpayment. The Commissioner's objection is sustained.

### IV. CONCLUSION

In the present case, the court finds substantial evidence on the record as a whole supports the ALJ's conclusion that McInnis was "not without fault." Because the ALJ's findings on the issues of overpayment and McInnis's fault are supported by substantial evidence in the record, the final decision of the Commissioner denying waiver of recovery is affirmed.[2]

Upon *de novo* determination of those portions of the Report and Recommendation, or specified proposed findings or recommendations to which the Commissioner has made an objection, *see* 28 U.S.C. § 636(b)(1), the court finds that the Commissioner's objection to Judge Zoss's finding that the ALJ improperly determined that McInnis was "not without fault" is **sustained**. Therefore, the Report and Recommendation by Magistrate Judge Paul A. Zoss concerning disposition of this matter is **rejected**. *see* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge].")—and **judgment shall enter in favor of the Commissioner** and against McInnis in this action.

**IT IS SO ORDERED.**

---

2. As noted by the ALJ in his decision, it is highly recommended that the SSA offer McIn- nis a monthly repayment plan commensurate with his current earnings.